## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEANIE JONES,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.:** |
| | ] | **2:07-CV-1027-VEH** |
| **CHRIS BLEVINS,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiff Jeanie Jones ("Jones") initiated this civil rights case against Defendant
Chris Blevins ("Blevins"), a deputy with the Shelby County Sheriff's Office, on June
1, 2007.  (Doc. #1).  In her complaint, Jones asserts claims of false arrest and
excessive force stemming from her arrest on September 17, 2005.  (Doc. #1 ¶ 5).
Jones filed an amended complaint (Doc. #19) on December 5, 2007, which expands
upon the factual allegations surrounding her claims for false arrest and excessive
force.

Pending before the court is Blevins's Motion for Summary Judgment (Doc.
#26) filed on March 12, 2008, and supporting materials (Docs. #27, #28) filed on
March 12, 2008, and March 14, 2008, respectively.  Jones filed her opposition (Doc.

#30) on March 18, 2008, as supplemented (Doc. #32) on March 20, 2008. Blevins did not file a reply brief.

Also pending is Jones's cross-Motion for Summary Judgment on the Issue of Liability Only for False Arrest and Excessive Force (Doc. #29) (the "Liability Motion") filed on March 14, 2008. Jones supplemented her Liability Motion (Doc. #31) on March 20, 2008. No opposition or reply brief pertaining to Jones's Liability Motion was filed. As discussed more fully below, the court concludes that Blevins's Motion for Summary Judgment is due to be granted, Jones's Liability Motion is due to be denied, and Jones's case is due to be dismissed with prejudice.

## II.    STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that he or she is entitled to

judgment as a matter of law.  *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955);[1] *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996).  The court will consider each motion independently, and in accordance with the Rule 56 standard.  *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit."  *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

## III.   STATEMENT OF FACTS[2]

On September 17, 2005, Jones and her husband, Mark Jones ("Mr. Jones") left the home of David Willingham ("Willingham"), located on Highway 47 in Shelby, Alabama.  (Doc. #19 ¶ 5 at 2).  They were riding in a van owned by a relative named Ramona Lansford, and Jones was driving.  (*Id.*).

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[2]These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

Blevins and Chris Harmon ("Harmon") (a deputy also with the Shelby County Sheriff's Office) were on patrol together that morning. AF No. 1.[3] Blevins and Harmon were observing the property that Jones was on, and the van itself, because Willingham's residence was a suspected location of drug use, manufacture, sale, or distribution; and also the van, driven by Jones, they knew was used by suspected drug users. *Id.* Blevins and Harmon were interested in suspicious persons and vehicles leaving the property that they were watching. AF No. 2.

The deputies noticed that the van leaving the property had a switched tag, which is illegal, often sneaky, and very commonly indicates other illegal activity. AF No. 3. Also, the van was rough-looking on the outside, had dark windows, criminals are known to prefer dark windows, and dark windows make the job more dangerous for law enforcement during stops. AF No. 4. They pulled the van over after noticing this tag violation because they needed to check to see if either the vehicle or the tag might have been stolen. AF No. 5.

---

[3]The designation "AF" stands for admitted fact and indicates a fact offered by Blevins that Jones has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case. Whenever Jones has adequately disputed a fact offered by Blevins in either her opposition or her Liability Motion, the court has accepted Jones's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Blevins's Statement of Facts as set forth in Doc. #26 and responded to by Jones in Doc. #30.

4

Blevins had information about illegal drug use in this area of Shelby County. AF No. 9.  Relatedly, Blevins suspected that Jones and her husband were involved with illegal drugs, and Blevins knew Jones's appearance, associates, husband, and lifestyle, all of which were consistent with illegal drug use or other illegal activity. AF No. 8.

More specifically, Jones and Mr. Jones were thought by Blevins and Harmon to be methamphetamine (also known as "ice") users, and those particular addicts can be unpredictable, overly-suspicious, sometimes desperate, and dangerous.  AF No. 11; AF No. 12.  Jones and her husband looked and acted just like methamphetamine users; that is, they were very slender, not well groomed, suspicious of others (or paranoid), had no visible means of support, had that reputation in Shelby County, lived like drug users, kept a house like drug users, and had the skin color and/or appearance and/or smell of methamphetamine users.  AF No. 33.

After writing Jones a ticket for the tag violation, Blevins conducted a search of the vehicle.  (Doc. #19 ¶ 5 at 3).  Blevins's best recollection is that Jones told him that she did not know where her husband was when he and Harmon first spoke with her that day.  AF No. 18. Jones did not indicate to either Blevins or Harmon that Mr. Jones was hidden in the back of the van within reach of two (2) loaded guns.  AF No. 20.  Blevins was alarmed when he discovered Mr. Jones in the van; his discovery at

that point came as a surprise.  AF No. 27.

Blevins eventually removed from the van a 12 gauge shotgun and a 22 caliber rifle, which were mounted inside the van in a homemade gun rack, and clearly visible. (Doc. #19 ¶ 5 at 4).  At the time, Blevins did not know if either Jones or Mr. Jones had been convicted of a felony, but he knows they were later, and at the time, it was possible they might have been convicted felons.  AF No. 34.  Blevins understood that drug users and felons were not supposed to be in possession of firearms.  AF No. 37. Jones and her husband were both charged with and arrested for carrying a concealed weapon.  (Doc. #19 ¶ 5 at 4).

In making the arrest, Jones complains that Blevins handcuffed her so tightly that it bruised her wrist.  (*Id.*).  Jones also maintains that Blevins bruised her arm when he put her into the police car.  (*Id.*).  More specifically, she contends that Blevins roughly placed her in the police car by squeezing and bruising her right arm, and pushing her into the seat in the back of the vehicle by her husband.  (*Id.*).

Jones and Mr. Jones were taken to jail.  (*Id.*).  Jones stayed in jail for three to four days.  The charge of carrying a concealed weapon against Jones was dismissed at the preliminary hearing or first setting.  (*Id.*).  Jones eventually pled guilty to the switched tag charge.  AF No. 17.

## IV.   ANALYSIS

### A.   Qualified Immunity

Blevins asserts that he is entitled to qualified immunity for his acts as a deputy. Thus, the court is required to examine this unique area of the law.

#### 1.   General Principles

Qualified immunity is a defense available to law enforcement officers (as well as other state actors) and is designed to greatly limit litigation against such persons in their individual capacities.  Indeed, the defense is so broad that only those officers who are "plainly incompetent or those who knowingly violate the law" are required to defend against individual liability claims.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The purpose of qualified immunity is, "to ensure that before they are subjected to suit, [law enforcement] officers are on notice [that] their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

For individual defendants, qualified immunity utilizes an "'objective reasonableness' standard, giving a government agent the benefit of the doubt unless [his] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998).  As the Eleventh Circuit has summarized, "'the salient

7

question . . . is whether the state of the law [at the time of the events in question] gave [the deputy] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional.'" *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Once a defendant has raised the defense of qualified immunity and has met the burden of showing that his or her actions were within the scope of discretionary authority, then the plaintiff has the burden to overcome the defense. More specifically, the Eleventh Circuit recognizes the following two-part analysis for qualified immunity claims:

> 1.   The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

> 2.   Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (citing *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)) (other citations omitted); *see also Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) ("The Supreme Court has established a two-part test [that pertains to the plaintiff's burden in] evaluat[ing] whether an official is entitled to qualified immunity. First, as a threshold inquiry, we

8

address whether the facts presented, taken in a light most favorable to the non-moving party, establish a constitutional violation. If we answer this question in the affirmative, then we 'ask whether the right was clearly established.'") (internal and other citations omitted).

Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law with respect to this case. *Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose."). Furthermore, there is a temporal requirement related to the clearly established law inquiry. More specifically, a plaintiff must show that a reasonable public official would not have believed his actions to be lawful in light of law that was clearly established at the time of the purported violation. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (explaining that qualified immunity assessment is made "in light of the legal rules that were 'clearly established' at the time [the challenged action] was taken") (citation omitted); *Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

9

### 2.    Specific Application[4]

In order to determine whether the defense of qualified immunity applies to Blevins's actions, the court must examine the specific claims Jones has made against him. As stated above and as briefed on summary judgment,[5] Jones's asserts claims of false arrest and excessive force against Blevins in his individual capacity stemming from her arrest on September 17, 2005.

#### a.    False Arrest

#### i.    Initial Stop

In addressing Jones's false arrest claim in the context of a qualified immunity defense, the court first evaluates the legality of the initial stop. The Eleventh Circuit has held that "a police officer may stop a vehicle when there is probable cause to

_____

[4]Jones does not challenge whether Blevins was acting within the scope of his discretionary authority. Therefore, the court's qualified immunity analysis focuses on the second part of the test, which is Jones's burden to carry.

[5]The court notes that Jones's amended complaint is not divided into separate counts. To the extent that Jones's amended complaint could be construed to assert any additional claims against Blevins, Jones has, by virtue of her summary judgment filings, abandoned them. *See, e.g., McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990).

Blevins has indicated that one of the reasons he initially stopped Jones and her husband was because the vehicle they were driving had an invalid tag. Jones has admitted that "[t]he tag was invalid." (Doc. #29 at 2). Moreover, Jones eventually pled guilty to the improper tag charge. Further, Jones has also conceded that Blevins "had probable cause to stop the van [Jones] was driving and to believe [Jones] was involved with illegal drugs at the time of [Blevin's] actions that day." AF No. 10. Therefore, no constitutional violation occurred when Jones and her husband were pulled over for an admitted tag violation.

### ii.    Probable   Cause   for Arrest

Jones was arrested for and charged with carrying a concealed weapon in the van she was driving. The parties dispute who actually arrested Jones. (Doc. #26 ¶ 31; Doc. #30 at 1 (disputing only ¶ 31 of Blevins's statement of facts)). Blevins maintains that Harmon, a nonparty to this action, arrested and handcuffed Jones and that Blevins, instead, arrested and handcuffed Mr. Jones. Blevins further contends that the DVD of the arrest establishes otherwise, but concedes that the actual

handcuffing of Jones is not portrayed.  (Doc. #26 at 17("While the actual act of hand-cuffing the Plaintiff is off to the right of the camera, the DVD proves she was hand-cuffed by Deputy Harmon during the short time before she was placed in the patrol car.")).

Jones recalls that Blevins arrested her and points out that several police records pertaining to her arrest list Blevins as an arresting officer.  (*See* Doc. #31 at Alabama Uniform Incident Report at 2; Doc. #32 at Alabama Uniform Arrest Report).  The court, however, does not need to resolve this factual dispute on summary judgment.

Assuming, as Jones asserts, that Blevins was the deputy responsible for arresting and handcuffing her, she has failed to demonstrate a lack of probable cause on his part for the concealed weapons arrest in light of the guns that were spotted in the vehicle after pulling Jones over for the tag offense.  As the Eleventh Circuit has noted in addressing qualified immunity in the context of an arrest, "the issue is not whether probable cause existed, but instead whether there was arguable probable cause.  Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist."  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.") (citing *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999)).  "Arguable probable cause exists

if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." *Crosby*, 394 F.3d at 1332; *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' *i.e.*, the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.").

The bases for Blevins's arguable probable cause to arrest Jones for carrying a concealed weapon include:  (1) his discovering the loaded weapons in a moving vehicle with tinted windows that Jones had been driving; (2) his suspicion of Jones and Mr. Jones as methamphetamine users in possession of firearms leaving a location known for drug activity; and (3) his surprise over Mr. Jones, the person closest to the loaded weapons, popping up into view from a low-lying place of concealment during the search of the van.

Moreover, even if Blevins lacked arguable probable cause on the concealed weapon charge, Jones's subsequent conviction, after a plea, to the charge of a switched tag provides conclusive proof of the existence of probable cause to both stop and arrest Jones.  As the Supreme Court recognized in *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), "[i]f an officer has probable cause to believe that an

individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Therefore, under *Atwater*, Blevins had the authority to arrest Jones for the switched tag offense, despite its minor nature, and her subsequent guilty plea substantiates Blevins's probable cause for charging her with the violation.  "If there is probable cause for one charge, the arrest was proper." *Williams v. City of Homestead, Fla.*, 206 Fed. Appx. 886, 887 n.1 (11th Cir. 2006).

As the former Fifth Circuit explained this rule in *U.S. v. Saunders*, 476 F.2d 5 (5th Cir. 1973):

> [A]ppellant presses upon us the view that <u>since the agents in making the</u> <u>arrest relied on the harboring and concealing charge, an offense for</u> <u>which there was no probable cause, the arrest was *ipso facto* invalid,</u> regardless of the agents' awareness of the marijuana on the galley table and the marijuana smoke in the air and their belief that Saunders was committing the offense of unlawful marijuana possession.
>
> . . .
>
> <u>This view is too narrow</u>.  To the extent the argument rests on the premise that the BNDD agents were unaware of the marijuana, its foundation is completely undermined by the district court's finding to the contrary.  To the extent it focuses on the agents' subjective reliance on the harboring or concealing charge, it is foreclosed by prior decisions of this court. <u>When an officer makes an arrest, which is properly</u> <u>supported by probable cause to arrest for a certain offense, neither his</u> <u>subjective reliance on an offense for which no probable cause exists nor</u> <u>his verbal announcement of the wrong offense vitiates the arrest</u>. *United States v. Bowers*, 5th Cir. 1972, 458 F.2d 1045, *United States v.*

14

> *Brookins*, 5th Cir. 1971, 434 F.2d 41, *cert. denied* 401 U.S. 912, 91 S.
> Ct. 880, 27 L. Ed. 2d 811 (1972); *see also Klingler v. United States*, 8th
> Cir. 1969, 409 F.2d 299, *cert. denied* 396 U.S. 859, 90 S. Ct. 127, 24 L.
> Ed. 2d 110.   Since the BNDD agents had probable cause to arrest
> appellant for marijuana possession, the arrest and the incident search
> were valid, and the agents' reliance on the harboring or concealing
> charge did not affect this result.

*Saunders*, 476 F.2d at 7-8 (emphasis added).  Therefore, Jones has not demonstrated

a constitutional violation concerning her arrest because of the existence of either

arguable or actual probable cause as a matter of law.

Alternatively, even if the arrest could be considered unconstitutional, Jones has

not demonstrated,[6] by clearly established law, that Blevins would have been on notice

of his illegal conduct.  More specifically, the Eleventh Circuit case upon which Jones

relies in her opposition as a basis for denying qualified immunity to Blevins, *Jordan*

*v. Mosley*, 487 F.3d 1350 (11th Cir. 2007) (*see* Doc. #30 at 5), post-dates the date of

her arrest by approximately twenty-one (21) months.  Therefore, the relative newness

of the *Jordan* decision means that it cannot constitute clearly established law with

respect to Blevins's actions against Jones in September 2005.

Additionally, the facts in *Jordan* are not comparable to the ones in this case.

*See Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998) ("The Supreme Court and

---

[6]Nor has the court's own independent research substantiated satisfaction of the
clearly established standard under this set of facts.

this court have stated that a plaintiff cannot strip a § 1983 defendant of h[is] qualified immunity by citing to general rules or abstract rights.  'Qualified immunity focuses on the <u>actual, specific details of concrete cases</u>.'") (emphasis added) (internal and other citations omitted).  Finally, Blevins has shown the lack of clarity surrounding the law on carrying weapons and/or pistols (*see* Doc. #26 at 26-31), and Jones has not demonstrated otherwise.

Therefore, Jones has failed to carry her burden on qualified immunity concerning her false arrest claim against Blevins.  Accordingly, summary judgment is due to be entered in favor of Blevins on this purported constitutional offense.

### b.   Excessive Force

Assuming once again that Blevins was the officer responsible for arresting and handcuffing Jones, Jones has failed to demonstrate a constitutional violation in the force used by him, including the tight handcuffing and some bruising.  As admitted by Jones, "[t]he Shelby County Sheriff's Department has a policy requiring hand-cuffing behind the back when Deputies arrest them, unless the arrestees are injured, disabled, elderly, or extremely young." (Doc. #26 ¶ 38; Doc. #30 at 1 (disputing only ¶ 31 of Blevins's statement of facts)).  Jones does not maintain that Blevins failed to follow this stated law enforcement procedure regarding handcuffing or that the policy is somehow unconstitutional as formulated.

16

Moreover, as determined above, the arrest itself was not unconstitutional. Therefore, some use of force was appropriate. "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citations omitted).

The complaints made by Jones about the tight handcuffing, bruising, and any other related injuries were *de minimis* in nature and do not constitute excessive force under the circumstances of her arrest, which included suspected methamphetamine use and/or other illegal drug activities. As explained by the Eleventh Circuit regarding the application of the *de minimis* rule to a portion of the plaintiff's excessive force claims in that case:

> Vinyard also claims that Stanfield's actions prior to handcuffing Vinyard at the arrest scene and upon her arrival at the jail constituted excessive force. <u>We disagree and conclude that Stanfield's force used and any injury sustained at those two points were de minimis and not excessive</u>. *See* decisions where force and injury were held to be de minimis and not excessive, *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (grabbed plaintiff and shoved him a few feet against vehicle, pushed knee in back and head against van, and handcuffed him); *Gold v. City of Miami*, 121 F.3d 1442, 1444 (11th Cir.1997) (handcuffed too tightly and too long); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir.1997) (slammed plaintiff against the wall, kicked his legs apart and required plaintiff to raise hands above head as officers carried out arrest); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th

Cir.1993) (pushed plaintiff against wall while handcuffed), modified, 14 F.3d 583 (11th Cir.1994); *see also Lee*, 284 F.3d at 1199-1200 (discussing these de minimis force cases). In *Saucier*, the Supreme Court approved again the observation that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." 533 U.S. at 209, 121 S. Ct. 2151 (internal quotation marks omitted). Thus, under the first prong of *Saucier*, we affirm the district court's grant of summary judgment in favor of Stanfield as to Vinyard's claims of excessive force at the arrest scene and at the jail. A strong argument exists that even Stanfield's grabbing of Vinyard and the minor bruising during the jail ride constitute de minimis force and injury in the same way as in *Nolin*, 207 F.3d at 1258 n.4. <u>What distinguishes Stanfield's force during the jail ride from the de minimis force and injury cases is the use of pepper spray.</u>

*Vinyard*, 311 F.3d at 1348 n.13 (emphasis added). Therefore, based upon *Vinyard*, Jones has not demonstrated a constitutional violation concerning the *de minimis* force used against her in securing her and making the physical arrest.

Alternatively, even if the force employed to arrest Jones could be considered unconstitutional, Jones has not demonstrated,[7] by clearly established law, that Blevins would have been on notice of his illegal conduct. More specifically, in opposition to summary judgment on her excessive force claim, Jones has pointed the court to a total of two (2) cases. One of the authorities listed was decided by the Seventh Circuit (*see* Doc. #30 at 8), which does not constitute clearly established law for the Eleventh Circuit. The other opinion, *Rodriguez v. Ritchey*, 539 F.2d 394, 400 (5th Cir. 1976),

---

[7]*See* n.6, *supra*.

is cited for the general proposition that an investigating officer may still be liable for Fourth Amendment violations even if he or she did not actually arrest the plaintiff, but it is not an excessive force case.  Accordingly, neither one of these decisions is helpful to Jones in carrying her burden of showing how Blevins's actions, either as an arresting or investigatory officer, violated clearly established excessive force law.[8]

## V.   CONCLUSION[9]

For the reasons stated above, Blevins's Motion for Summary Judgment is due to granted on the defense of qualified immunity, Jones's Liability Motion is due to be denied, and Jones's case is due to be dismissed with prejudice.  The court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 30th day of June, 2008.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[8]Jones's Liability Motion is equally devoid of any references to cases that clearly establish constitutional violations on the part of Blevins for either unlawful arrest or excessive force.

[9]The court is aware that Blevins has requested oral argument (*see* Doc. #26 at 31), but finds that a hearing is not necessary.

19